Good morning, Your Honors. May it please the Court, Barry Pontocello on behalf of Appellant to Dutra Group. If I may, I'd like to reserve four minutes for rebuttal. Manage your own time. I'll try to help. Thank you, Your Honors. Your Honors, we come before this Court in a maritime workplace injury case. It's not a third-party case. It's a workplace injury case. The question that the Court needs to address is, where an employee seaman brings an unseaworthiness action against a vessel-owner employer, does the congressional scheme for workplace injuries govern the scope of damages? And I would answer that resoundingly, yes, that that's what governs. And what I'd like to first point out is the acknowledgement of the Maritime General Law and how it developed. The Constitution indicated that the courts have admiralty jurisdiction. Following that time, the courts from Latawana to Jensen have discussed the scope of Congress in the courts. Latawana said the courts cannot make the Maritime Law, they can only declare it. Jensen said that Congress is paramount in the Maritime Law. So in our case, we need to look, is there congressional action? And that takes us to the Jones Act. Professor Angeron, in his amicus brief, I think adroitly brought us through the history in reference to Senate reports and discussed that when the Jones Act came into being in 1920, it intended to occupy the field for maritime workplace injuries. The United States Supreme Court 10 years later in Lindgren said, let me back up one second, FELA was incorporated in whole into the Jones Act. And Lindgren in 1930, 10 years after, approximately 10 years after the Jones Act said, much as the Jones Act, much as FELA occupies the space for interstate railway injuries, the Jones Act occupies the space for maritime seaman injuries. I just have a little trouble with that. I thought we still had the trilogy of claims usually asserted, negligence under the Jones Act, unseaworthiness, and maintenance and cure. And if it really occupied the field, maintenance and cure would be gone and unseaworthiness would be gone, and we know they're not. It draws to the distinction. Maintenance and cure does not come about necessarily when there's a workplace injury. That's the great distinction. Maintenance and cure, as an example. Sometimes it does, sometimes it doesn't. Exactly. The seaman can just get sick without getting hurt, and he's entitled to maintenance and cure, or he can get hurt, and he's entitled to maintenance and cure. And in the latter case, he also may have an unseaworthiness claim and a negligence claim under the Jones Act. That's exactly correct. Those are two separate and distinct remedies that you have. The injury scheme. Usually occupation of the field means whatever remedy you get, it's under the statute. For workplace injuries, that's the case. Maintenance and cure is not necessarily. You're saying you can't get maintenance and cure anymore if the need for it resulted from a workplace injury on the boat, and that's obviously not so. That's not what I'm saying. I'm saying that we have the Siamese twins, as they've been called, for workplace injuries of unseaworthiness in the Jones Act. Those deal with workplace injuries and the scope of the damages. Cure deals with something completely different, which may overlap or may not overlap, as you pointed out. But it's not the scope of what Congress intended when they occupied the area. What Lindgren tells us is that when a seaman has an injury, they've occupied the field. So you'd have to disregard Lindgren's language and the subsequent progeny after Lindgren to come to the conclusion that somehow maintenance and cure is anywhere near the workplace injury remedies. But in listening to you, it seems to me that you've evaded a bit of Judge Kleinfeld's question, which is can you have maintenance now for a workplace injury? I think the answer is yes. So going back to your central argument, how can Congress have so occupied the field and allowed this other remedy to exist? Because that would be inconsistent. Because of the case law that has come about since the Jones Act, since it's been enacted, it said you may have maintenance and cure and one of the two of the other, which are Jones Act and unseaworthy. They're two separate and distinct remedies. One deals with a workplace injury scheme. The other deals with service to the vessel. You can have a sailor that's in port that contracts a disease. There's no unseaworthiness. There's no negligence. He's entitled to cure. That's quite different from the damages you'd get from unseaworthiness or the Jones Act negligence. Let me move you ahead a little bit in your argument, if you don't mind. And that is we have, as you know, the Evich case, or I'm not sure how you pronounce it, written by Judge Wright. And if we apply Evich, then we're bound by it and the punitive damage remedy still exists. So your argument has to be that Miller overwrote it to the point where as a three-judge panel we can overrule Evich, right? Correct. Can I address that? Yes, exactly. That's why. Evich is not good law and not binding for a number of reasons. The first is that under the Miller v. Gammie case, where there's superior authority that is subsequent, the circuit is not bound. And we have Townsend and Miles subsequent that deal with the situation superior. Well, Miles, you would agree, did not directly address punitive damages. It addressed the supplementation of the statutory scheme with general maritime remedies. Right. That wasn't my question, though. It did not speak directly to punitive damages. But I know I understand your argument that the logical conclusion of Miles then compels a different result. It's the logical conclusion of the uniformity. And the language in Miles is replete that we no longer live in an era when the seamen need to look to the courts. Congress has made those decisions for us and has spoken to bring uniformity. And when we look at the progeny of the case law, from Lindgren to Manich to Moraine to Higginbottom to Miles, Townsend, Manich, they're all bringing these two, the unseaworthiness and the Jones Act, into harmony and unison. My esteemed adversary in his writings talks about the Siamese twins that Gilmore and Black also talk about, of unseaworthiness and the Jones Act, that they're basically one and the same for a lot of purposes. They represent, as the courts have said in Peterson and on, they are but two grounds for one indemnity result, which is separate and distinct from the maintenance and cure, which does not require proof of negligence or of any sort of liability, strict or otherwise. That's just service to the vessel. And that's what Justice Thomas, the other Justice Thomas in the Supreme Court. I'm Judge. He's Justice. Justice Thomas did in the Supreme Court. He gave us the road map. Townsend gives us an absolute road map. It says we can do this historical scavenger hunt unless Congress has legislated in the area. Congress says we have, if a seaman has an injury or death, the Jones Act applies, and here's the scope of damages. That's what's occurred. So the cure is quite distinct. And what Justice Thomas did was go through the historical and says his actual language is, if I may get it, the only statute that could serve as a basis for overturning the common law rule is the Jones Act. That's Justice Thomas's words. And that's where the road map is. You look to see has Congress talked about this area, about workplace injuries. If they have, you don't go through the historical hunt for whether or not it existed. And from our briefing, you know that we find no evidence that it existed. So what you want us to say is no punitives in unseaworthiness claims because we know there are no punitives in Jones Act claims, and they're not different with respect to workplace injuries. That's correct. That's correct. And that's not just from recent case law. If we look at the progeny of the cases, we have Moraine where there's no wrongful death action under general maritime law. What does the court do? It brings it into harmony and to unity with the Jones Act. Every one of the cases, we look at Higginbottom. We look at all of these up from Townsend to Miles. They all try to bring these two together, these Siamese twins together. And we have to remember that unseaworthiness, when the Jones Act was passed, was quite a different remedy. It was a remedy of due diligence, of a snapshot in time of a vessel that could be rendered asunder as far as recovery because of contributory negligence, because of the fellow servant rule, because of assumption and risk. But Manic, in 1944, the Manic Revolution did away with that. So when Congress enacted the Jones Act, and when Lindgren tells us later that this is the remedy, the scope of remedy for injured seamen, they clearly knew what they were doing. But even if we assume that Congress did not know the full scope of what they were doing, Moraine tells us that the goal of maritime courts is to bring about uniformity. I guess what has bothered me somewhat is the only reason we can get to your conclusion is that we have circuit law, not Supreme Court law, that says punitive damages are non-pecuniary damages. That's the Ninth, Kopinski and Nygaard in the Ninth Circuit say that. If that were not so, then it would be an open question. It would be an open question of whether punitive damages are allowed or whether they're pecuniary. Well, if they were treated as non-pecuniary, then we could and perhaps should distinguish the cases that say no punitives. Here's my concern. Typically, non-pecuniary damages are for things like loss of consortium, mental distress. Punitives, it's funny to hear them called non-pecuniary, but I know we have a case that says they are. That's what Miles has told us. Miles has told us non-pecuniary. They've given us the definition of that, and Kopinski and Nygaard in our circuit has told us that. Correct. We have to look at it. And Miles did affirm, at least in part, a non-pecuniary award. Right. Yes. But what they talked about – So, I mean, it cannot be that all non-pecuniary damages are out. Well, what I think has been consistent throughout all these cases, including Miles, is where you have a statute and a workplace injury, the statute is going to govern the scope of recovery. There's nothing to the contrary of those cases. You don't have a statute on unseaworthiness. You just have a statute on Jones Act. Correct. And what have the courts told us about what unseaworthiness is? It's the Siamese twin of Jones Act, that they are basically – Well, what they mean when they say Siamese twin is that you hardly ever see a complaint for a Siemens injury that doesn't plead both, not that they're identical. Well, Gilmour and Black tell us that the differences have largely been obliterated, their words, not mine. And the Jones Act requires the employer to have a duty to have a safe workplace, which is very much overlapping with unseaworthiness. They overlap, but they're not the same. They're not exactly the same. I would concur with that. But the scope of damages – You can have a Jones Act claim where you have a perfectly good vessel, but somebody makes a mistake in the operation of the vessel. Unseaworthiness is directed toward the condition of the vessel. Correct. But many times there is overlap between those two where the safety issues overlap. But I think we need to look at how's the courts treated these when there's a statute involved. And as Higginbottom says, where you have a statutory remedy for a scope of damages, you're not free to supplement that. Miles tells us that too. So the Townsend case, I'd like to just address that, is directly on point with our position, is that Justice Thomas says you go through this historical search only and unless Congress hasn't gotten there. And Congress, in our case, has talked about a seaman's action against his employer. So that has been there. And the courts have consistently tried to harmonize. If we look at Moraine, they didn't try to make the unseaworthiness different. They tried to make it the same as the statute. They saw an anomaly. And in Moraine they said we see an anomaly and we want to make this as the Jones Act is. These are two grounds for one indemnity recovery. That's where the law has consistently tried to go. And I would acknowledge that they're not the same, but the scope of damages are. And the law that we have from Lindgren and Higginbottom to Gaudet, Townsend all the way through Miles, tells us the attempt to reconcile the scope of damages and to bring about uniformity is what is needed. And Justice Thomas in Townsend says, well, there's a laudable quest for uniformity, but we don't want to go there if Congress hasn't spoken. I concur with that. But where you have a scope of maritime workplace injury damages, Congress has spoken. And the courts should not be free to expand those remedies. That's where we've been with it. Thank you, Counsel. Thank you. Thank you. May it please the Court, I'm David Robertson for Chris Batterton, the appellee. The idea that the Jones Act occupies the field, which was central in the amicus brief on behalf of the plaintiff and major in history, was taken from Lindgren in 1930. And the very sentence that says the Jones Act occupies the field, at page 47 in Lindgren, goes on to say, covers the entire field of injuries for seamen. It is paramount and exclusive and supersedes the operation of all state statutes dealing with that subject. There's not a word in Lindgren about statutory displacement of federal case law. It's altogether a preemption case, altogether a preemption case. It's about the effect of the Jones Act on the law of the states. They simply omit the key phrase, plea clause, in that very sentence. Here's what Miles says about the effect of the Jones Act on seaway days. The Jones Act evinces no general hostility to seamen's recovery. It does not disturb, it does not disturb the cause of action for unseaworthiness. It does not disturb the seamen's general maritime claim for injuries resulting from unseaworthiness. That's Miles at page 29. Here's what Townsend says about the effect of the Jones Act on general maritime law claims. This is at pages 423 and 424 of Townsend. As this Court has repeatedly explained, remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of different principles and procedures. He goes on to say, the laudable quest for uniformity and admiralty does not require the narrowing of available damages to the lowest common denominator approved by Congress for distinct causes of action. It couldn't be plainer. They're saying the Jones Act does not ratchet down damages for other maritime. I find that part of your argument quite persuasive. I'd like to confront you with a different approach so that you can address it and help me on it. Thank you. I'm satisfied that in Evitch they said punitive damages are available for unseaworthiness claims. And then in Miles, subsequently to Evitch, the Supreme Court said that other types of damages, which we have subsequently said include punitive damages as non-pecuniary, are not available for the unseaworthiness claim of a murdered seaman. Now, wrongful death is historically different from injury because of Lord Campbell's Act and the previous rejection of tort remedies before statutes for wrongful death. So we know from Evitch punitive damages are available. We know from Miles that punitives are not available in a wrongful death claim for a seaman. And the issue is whether to distinguish that or not. And we know from Atlantic Sounding v. Townsend that not all other maritime remedies are precluded by the Jones Act remedy. It's not exclusive. My big concern is the Fifth Amendment has come down with an en banc, McBride v. Estes Wealth Service, that says that under Townsend and Miles punitive damages are barred in unseaworthiness claims. So you're asking us to disagree with the Fifth Circuit. Now, we can. The question is whether we should. Ordinarily, circuit uniformity is desirable. We have a lot of deference to our sister circuits. Why shouldn't we follow the Fifth Circuit? The Fifth Circuit was divided in several ways. With respect to punitive damages for wrongful death, the vote was 9 to 6. But with respect to punitive damages for personal injury, it was actually 8 to 7 the other way. Judges Haynes and Elrod broke off from the majority to say we don't see any basis in the reasoning of the majority by Judge Davis. That certainly makes it easier to say we agree with the dissent. But why should we? Well, because the Miles source of the whole idea that general maritime law precludes punitive damages on account of their non-pecuniary nature assumes that every time you see the word non-pecuniary, it automatically is meant to include everything that could possibly be thought of as non-pecuniary. And you already know that that troubles me, but it seems to be nice circuit law. Well, it's plain. I think Judge Thomas made this point already. Miles awards pain and suffering damages in a survival action. The seaman in Miles died slowly. He was stabbed or cut 62 times at least and died slowly. And there was a substantial award for his pain and suffering, which was a state. That's non-pecuniary. $140,000 was the award in Miles. It was affirmed by the Supreme Court. So they don't mean all non-pecuniary. And with respect to punitive damages, just thinking about what the Miles court could be read to be said to have had in mind, there were punitive damages at stake in Miles in the lower court, and the holding was that there was not sufficient blameworthiness. And the Supreme Court did not pause to remark that there was something wrong with the concept of punitive damages. They just simply recited. The only time they used the word was when they were reciting the opinion in the lower courts. In the lower courts, Judge Rubin, for the court Miles v. Melrose, which was affirmed as Miles v. Apex, addressed that punitive damages issue specifically and in the context of unseaworthiness. The lower court had for some reason found this was not an unseaworthy ship, although the murderer there, a man named Clifford Melrose, was a berserker. He, as I say, stabbed the victim 62 times. Judge Rubin, for the Fifth Circuit, this is unseaworthy as a matter of law, this vessel, because of an unfit crew member. But, he said, now to go on to consider the issue of punitive damages, the issue is whether there's sufficiently high level of fault on the part of the shipowner. And the focus there was the ship's berser, who was said to have more or less aided and abetted the murderer's drinking habits. And Judge Rubin said the facts are not there for recklessness for that. He did not read the facts as aiding and abetting, but simply have been turning a blind eye. So my point is that punitive damages were in the Miles case. The Supreme Court didn't go out of its way to say they're not available. And, of course, we know from cases all the way through the history of this concept that the Supreme Court, every time it's confronted the issue of punitive damages in maritime cases, has spoken affirmatively of their availability. And they've been awarded in Von D. Atkinson in 1960, it was a maintenance and cure context, in which the plaintiff's lawyer didn't even ask for punitive damages in the lower courts. And Judge Davis, for the Supreme Court, found a way to give them punitive damages. This was a maintenance and cure willful neglect case. And Justice Stewart and another, in an opinion labeled dissent, but they were really dissenting on another point, said the right way to do what the majority did, that is penalize the employer for this outrageous treatment of the seaman, was to go to punitive damages outright. Justice Douglas had done it under the guise of attorney's fees. So counsel in court said Von is punitive damages in a seaman's case. And in Exxon, the Exxon Shipping, L.D.'s, those, a major constituent of the class of plaintiffs there, were commercial fishermen, not just businesses, but blue-collar seamen who were making their living fishing. These are seamen. They're not suing for personal injury under the trilogy, but they are seeking damages for loss of their livelihood. And punitive damages were available. The Supreme Court signed off on that and said, by the way, in terms of the idea that statutory law is always paramount, when the court came to the direct consideration of the punitive damages award and the appropriate amount, they said, in the absence of a direct statutory command to the contrary, we function like a common law court to develop the maritime law as it moves along, just like the law in any jurisdiction with the Supreme Court. So how important is the form of the action? In other words, Miles has a wrongful death action. Evitch has a survival action. Here we have a personal injury action. Does that make a difference in your view as to the analysis of whether punitive damages are available? The wrongful death has to be treated differently by virtue of its history. In that separate two-judge opinion in the Fifth Circuit's McBride, the judges said, as a matter of logic, it makes no sense for a seaman to be able to get punitive damages when injured but not when killed. As a matter of logic, it can make no sense. But as a matter of history, it's unavoidable. So I think that death, unseawomen's death, I think a good case can be made that punitive damages ought to be available, but that's not this case and that's not Evitch and that's not what I mainly need to talk about, which is that Evitch is unassailable under present law. He's not enough like Miles to even pause under. As between personal injury and survival, I don't think there is any difference. Because the injury is to the seaman assuming to get or the injuries are related to the damages to the seaman, not to the estate. That's right. That's right. Not to the heirs. So I think that the fundamental bottom for the argument from Dutra is that the Jones Act, as construed in Miles, kills punitive damages for seamen. And it doesn't, neither the Jones Act nor Miles comes anywhere near saying that. I don't want to go back to day one of admiralty, but when you look at the Jones Act and the FALA that was adopted by the Jones Act, the Jones Act doesn't use the word damages at all. FELA talks about, quote, the employer being, quote, liable in damages without any specification in section 45 U.S.C. 51. 45 U.S.C. 59, the survival provision in FELA doesn't mention the word damages. So there's no hope that anybody could look at these statutes and say they speak directly to punitive damages. They don't speak directly to non-pecuniary damages, if you think of that as a viable class. They've never been read by the Supreme Court to speak directly to either of those things. What Miles says is we're looking here, Miles, looking here at a brand-new cause of action, which the Miles Court itself created. The Moraine Court back in 1970 said there's a general maritime law right of action for death. But Miles said we're the first court to have to answer the question whether that covers seamen. They wanted to say, well, of course it should and does, but that's a new holding. And then the court went on to say, A, in Jones Act cases, seamen's families can't get loss of society. And holding B, therefore, in unseemly cases, seamen can't get loss of society. The third holding having to do with survival actions. Not wrong with that. Survival actions, lost future earnings. Miles awarded those, although they are non-pecuniary. So I think the pecuniary, non-pecuniary approach to the problem is more of a confusion than an aid, I think, fairly speaking. Punitive damages are sometimes characterized as non-pecuniary and sometimes not. What should we do about Kappa Zinsky or Cope Zinsky? Zinsky picked up the idea that punitive damages are non-pecuniary and without any citation whatever. But we're bound by it. It's circuit law. Unless we can distinguish it. Kappa Zinsky is a Jones Act case only. Kappa Zinsky, to simply say, we're not talking about unseaworthiness. So what we should do is distinguish it because it's Jones Act and this case is unseaworthy. Yes, sir. Yes, sir. It's absolutely. The court made plain it was not talking about unseaworthiness. I have opinions about the Jones Act issue, but that's not before us. It's with the death issue. Any further questions? Thank you, counsel. Our questions took you through your time, but we'll give you a couple minutes for rebuttal. Thank you, Your Honor. I'd first like to talk about EVICH, and the fact that we hear that it's unassailable is somewhat shocking to me because EVICH was based on in re meri shipping, which was overturned. So its underpinnings have been overturned. I don't know how that's unassailable. So if the EVICH court today was given the case and they did exactly what they did in 1987, which was let's look to the Fifth Circuit, they would find McBride. They would find the case that Mr. Robertson argued, which was McBride. And I didn't hear compelling reasons why McBride is incorrect other than we just should have punitive damages. And Miles, to read from Miles, it says, to quote it. Well, the Supreme Court has really been pretty receptive to punitive damages repeatedly, and they've also repeatedly restated that semen are the darlings of admiralty, partly to justify choosing the more liberal to semen approach. It was striking in the Exxon Valdez. The oil companies made a very strong argument that punitives were unavailable under the amiable Nancy and under the federal statutes regarding oil spills and all kinds of stuff. And the Supreme Court said no, punitives are traditional in admiralty. You've raised three great points. One, and let me take on Baker. Baker is not a workplace injury case. It is a third-party case. I have no qualms with third parties under general maritime law getting punitive damages. But Baker supports our position because Baker says under the Clean Water Act, let's look through there like Justice Thomas did in Townsend. Let's look through the Clean Water Act. Is there a scope of damages that we need to put a limitation on the plaintiffs? No, there wasn't. So then we're free to go to the general historical search like Justice Thomas did in Townsend. So Baker supports it. Baker is along the progeny of Townsend and Miles in looking for the statutory scheme. And when you say that the Supreme Court likes punitive damages, I think we need to say the Supreme Court considers do we augment or do we supplement the statutory scheme? Higginbottom, Gaudet, all of these cases, Miles, Townsend say we don't if Congress has spoken. Higginbottom says Congress has made the decision for us. With regard to pain and suffering, courts have traditionally treated this as a part of the compensatory damages. There are circuit court decisions that say they get this as part of their compensatory damages. Punitive damages are to punish. They're not to compensate. They are completely different. And I just want to indicate that to get to the point of saying that punitive damages are allowed, this court has to do three amazing things which were being asked by the appellee. One is to assume that Congress, when they enacted the Jones Act, didn't know what the maritime law was in effect at the time, which Miles and the other Supreme Court cases say we must do the opposite. We must assume that Congress knew what it was when it enacted it. Secondly, if they didn't know what it was, we have to make the determination that uniformity should not be followed much in the way it was in managed. So if Congress didn't consider what unseated worthiness would become, and we know what managed, it became strict liability, the courts have a duty to bring uniformity to the scope of damages. We have to also throw that out. So two things we have to throw out to get to punitive. The third, what I heard my adversary say, is we should punish injuries, but not punish an employer when they cause a death. I can't fathom anything more unlogical than that and against policy than that and dis-uniform than that. Everybody agrees on that, I think, including your opposing counsel, but wrongful death has traditionally been treated differently. Well, the case is – Actually, I can make up an excuse for it. You can't give the punitives to the guy that was killed because he's dead. Right. It's a person who brings the action rather than the action itself. But the purpose of the punitive is to punish the wrongdoing. You do not punish them when their actions are so egregious to cause a death. You're punishing them when there's an injury of some type. And I would disagree that the courts from the Jones Act on have not said injury and death should be treated together. And the Jones Act, it says, is for a semen for injury and or death. So – and the point about Kopinski is the law of this circuit, as Your Honor points. But can it be distinguished because it's not an unseaworthiness case? I don't think it can be because it says punitive damages are non-pecuniary. And Miles tells us that you cannot augment a Jones Act claim with non-pecuniary. So I think we're directly on point here, and it is a contortion to say that it's the opposite. And the basis that they have for their argument is a historical scavenger hunt, which Townsend tells us is not necessary. Baker tells us is not necessary. Miles tells us about uniformity. All of the cases all the way up tell us about that uniformity. Thank you, counsel. Thank you, Your Honor. Thank you both for your arguments. The case has now been submitted for decision.
judges: Kleinfeld, Thomas, Nguyen